CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 3 0 2013

JULIA C. DUDLEY, CLERK
BY:
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DENNIS WHITE, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 7:10CV00467 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| BB&T INSURANCE SERVICES, INC., ) | By: Hon. Glen E. Conrad |
| et al., ) | Chief United States District Judge |
| ) | |
| Defendants. ) | |

This case is presently before the court on the plaintiffs' motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion will be denied.

## Background

Dennis and Laurie White (collectively, "the Whites") and their two companies, Cornerstone Custom Homes, LLC ("Cornerstone") and Chores & More Handyman Services, LLC ("Chores & More"), filed this action on October 18, 2010, asserting claims of professional negligence, breach of fiduciary duties, and breach of contract against BB&T Insurance Services, Inc. ("BB&T") and Farmers Insurance Exchange ("Farmers"). The plaintiffs' claims stemmed from the acts of one of the companies' employees, who allegedly stole tools and took over the companies' business while the Whites were out of town in September of 2007. The plaintiffs asserted that BB&T failed to procure adequate insurance to protect the companies from the employee's actions, and that BB&T failed to provide accurate advice when the plaintiffs reported the employee's actions to BB&T in October of 2007.[1]

---

[1] The Whites obtained the companies' insurance through BB&T and their personal insurance through Farmers. The claims against Farmers were voluntarily dismissed.

Prior to filing the instant action, the Whites filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Virginia. In the bankruptcy proceeding, the Whites reported that the companies had no assets and that neither the companies nor the Whites had any legal claims against any party. The bankruptcy court entered an order discharging the Whites on June 23, 2008, and on December 7, 2008, the Whites' Chapter 7 trustee filed a no asset report. The bankruptcy case was closed on August 24, 2009.

BB&T moved for summary judgment in the instant action on April 11, 2012. On July 23, 2012, the court issued a memorandum opinion and order granting BB&T's motion in part and denying it part, and staying the case for 60 days. The court explained that the only party with standing to pursue any of the plaintiffs' claims was the bankruptcy trustee, since the plaintiffs' claims accrued before the Whites filed for bankruptcy and, thus, belonged to the bankruptcy estate. Rather than dismissing the case for lack of standing, the court afforded the Whites the opportunity to ask the bankruptcy court to reopen the bankruptcy case to permit the trustee to determine whether to adopt or abandon any claims that survived BB&T's motion for summary judgment.

The court then addressed the merits of the companies' claims against BB&T. The court held that the claim for breach of fiduciary duties was barred by the applicable two-year statute of limitations. The court also concluded that BB&T was entitled to summary judgment on the companies' claim that BB&T breached a contractual duty and was negligent in failing to insure that the companies had adequate coverage for the losses occasioned by the employee's actions, since the plaintiffs proffered no evidence that additional insurance existed which would have covered the companies' losses.

The court denied summary judgment on the companies' claim that a BB&T representative negligently advised the plaintiffs that the companies had no insurance coverage for the employee's

actions under the policies that were procured by BB&T. The plaintiffs claimed that it was not until 2010, when they began working with a new insurance agent, that they learned that the companies could have filed claims under the existing policies, and that the companies' claims were ultimately denied as untimely filed. While BB&T argued, on summary judgment, that the companies' claims were denied for reasons that had nothing to do with the delayed reporting and, thus, that the plaintiffs suffered no damages, BB&T failed to proffer evidence to support this argument, and neither the general liability policies nor the employee dishonesty bonds were submitted by either side. Consequently, based on the record before the court on summary judgment, the court was unable to conclude that the companies were not harmed by statements allegedly made by the BB&T representative. Accordingly, the court denied the motion for summary judgment with respect to that claim.

The court stayed the case for sixty days to allow the plaintiffs to present the remaining claim to the bankruptcy trustee. After the sixty-day period expired with no further action having been taken by the plaintiffs or the trustee, the court dismissed the remaining claim for lack of standing and terminated the case from the court's active docket.

On June 17, 2013, the plaintiffs filed the instant motion under Rule 60(b), arguing that the dismissal of their case resulted from their attorney's negligence. BB&T filed a brief in opposition to the motion along with additional evidence, including the insurance policies procured for the companies. The court held a hearing on the plaintiffs' motion on July 22, 2013. The motion has been fully briefed and is ripe for review.

## **Discussion**

Rule 60(b) of the Federal Rules of Civil Procedure authorizes a district court to grant relief from a final judgment for certain enumerated reasons including "mistake, inadvertence, surprise or

3

excusable neglect," or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b). "Under all the provisions of Rule 60(b), a threshold condition for granting the relief is that the movant[s] demonstrate that granting the relief will not in the end have been a futile gesture, by showing that [they have] a meritorious defense or claim." Boyd v. Bulala, 905 F.2d 764, 769 (4th Cir. 1990). After reviewing the additional evidence provided by BB&T, the court concludes that the plaintiffs are unable to make this threshold showing.

As set forth above, the plaintiffs' remaining claim asserted that BB&T acted negligently when the Whites reported that one of their employees had stolen from the companies. The plaintiffs alleged that a BB&T representative advised them that nothing could be done because the companies' general liability policies had lapsed, and that the representative failed to recognize that the general liability policies were occurrence-based and, thus, that they provided coverage for losses that occurred during the policy period, even if the policy expired before the claim was filed. The plaintiffs further alleged that the representative failed to advise them that the companies had employee dishonesty bonds that might have covered some of the companies' losses.

In response to the instant motion, BB&T has provided additional evidence including the dishonesty bonds and general liability policies issued to Cornerstone and Chores & More. It is clear from these uncontradicted submissions that neither the dishonesty bonds nor the general liability policies afford coverage for the losses at issue, and, thus, that the plaintiffs cannot establish that BB&T proximately caused them any damages. See Jonas B. Crooke Interests, Inc. v. CTL Eng'g, Inc., Nos. 97-1227, 97-1357, 1999 U.S. App. LEXIS 5742, at *8 (4th Cir. Mar. 29, 2009) ("To prove a claim for professional negligence, a plaintiff must show that a professional relationship giving rise to a duty of reasonable care existed between the plaintiff and the defendant,

that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's claimed damages.") (citing Gregory v. Hawkins, 468 S.E.2d 891, 893 (Va. 1996)).

The record indicates that Chores & More's dishonesty bond was cancelled several months before the plaintiffs' losses occurred. Additionally, the dishonesty bonds issued to Cornerstone and Chores & More only provide coverage for fraudulent or dishonest acts that are "punishable under the criminal code in the jurisdiction within which [the acts] occurred," and for which an employee is "tried and convicted by a court of proper jurisdiction." (BB&T Exs. B & C.) The record reveals that the plaintiffs were advised of this conviction requirement in a letter dated January 24, 2008, after submitting a claim on Cornerstone's dishonesty bond. (BB&T Ex. A.) Likewise, on January 10, 2011, the plaintiffs were advised that Cornerstone's dishonesty bond requires a criminal conviction. (BB&T Ex. F.) Nevertheless, it is undisputed that the employee accused of stealing the companies' property was never arrested or charged with a crime. Consequently, regardless of when the companies reported their claims to the surety, they are not entitled to coverage under the dishonesty bonds.

Likewise, the undisputed evidence establishes that the companies are not entitled to coverage under their general liability policies. The record reveals that Chores & More's general liability policy lapsed for nonpayment of the premium in July of 2007, well before the events occurred that gave rise to the plaintiffs' alleged losses. Consequently, that policy affords no coverage regardless of whether it is an occurrence-based or claims-made policy, since both the occurrences giving rise to the losses and the reporting of the losses happened after the policy expired.

As for Cornerstone's general liability policy, the plaintiffs argued on summary judgment that the policy might provide coverage for tools stolen by their employee, since the insurer had

agreed to pay for stolen tools in the past. The records submitted by BB&T indicate that the inland marine portion of Cornerstone's general liability policy contains a floater that provides $5,000.00 in special coverage for "Miscellaneous Tools." (BB&T Ex. I at RFD 000298.) However, the policy also contains the following exclusion, which expressly excludes coverage for losses resulting from employee theft:

> 2. "We" do not pay for loss or damage if one or more the following exclusions apply to the loss:
>
>    . . .
>
>    b. Criminal, Fraudulent or Dishonest Acts – "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by:
>
>       (1) "You";
>
>       (2) Others who have an interest in the property;
>
>       (3) Others to whom "you" entrust the property;
>
>       (4) "Your" partners, officers, directors, trustees, joint adventurers; or
>
>       (5) The employees or agents of (1), (2), (3), or (4) above, whether or not they are at work.
>
>       This exclusion does not apply to acts of destruction by "your" employees, <u>but "we" do not pay for theft by employees</u>.

(BB&T Ex. I at PL 0232-233) (emphasis added). Accordingly, Cornerstone's general liability policy provides no coverage for the tools that were allegedly stolen by the plaintiffs' employee.

In sum, because neither the companies' employee dishonesty bonds nor their general liability policies provide coverage for the losses at issue, regardless of when the losses were reported, the plaintiffs cannot establish that BB&T actually or proximately caused them any

6

damages. Consequently, the plaintiffs are unable to make a threshold showing that they have a meritorious claim for negligence and, thus, their Rule 60(b) motion must be denied.[2]

### Conclusion

For the reasons stated, the court will deny the plaintiffs' motion for relief from judgment under Rule 60(b). The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 30th day of August, 2013.

_____
Chief United States District Judge

---

[2] Having reached this decision, the court need not address the additional arguments raised in BB&T's brief in opposition to the plaintiffs' motion.